UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

RONALD C.,

                Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

Case No. C21-5574 TLF

ORDER

Plaintiff has brought this matter for judicial review of the Commissioner's denial of his application for disability insurance ("DIB") benefits. The parties have consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73; Local Rule MJR 13.

## PROCEDURAL BACKGROUND

Plaintiff applied for disability insurance benefits (DIB) in December 2016, and after initial denial and denial of reconsideration, he appealed the denial of benefits. The first hearing before an ALJ was held January 31, 2019; the ALJ decided plaintiff was not disabled. AR 141-159. The Appeals Council reviewed plaintiff's case and remanded for a new hearing. AR 160-165.

On November 10, 2020, the ALJ conducted a hearing on remand. AR 62-89. The ALJ issued a decision on December 10, 2020, finding plaintiff not disabled. AR 15-42. In the written decision, the ALJ determined that plaintiff had the severe impairments of

ORDER - 1

diabetes, hypertension, chronic kidney disease, peripheral neuropathy, edema, cellulitis, congestive heart failure (with left ventricular dysfunction), and adjustment disorder. AR 19. After the Appeals Council denied plaintiff's request for review, plaintiff filed a complaint with this Court, seeking reversal and remand for award of benefits, or further administrative proceedings. AR 1-6; Dkt. 18, Plaintiff's Opening Brief, at 18-19.

The Court finds that a remand for award of benefits is warranted, but the Commissioner will also be required to determine the date of onset, because the record shows two potential dates of onset – and this is a factual issue that should be resolved by the Commissioner.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of Social Security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017) (internal citations omitted). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (internal citations omitted). The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The Court also must weigh both the evidence that supports and evidence that does not support the ALJ's conclusion. *Id.* The Court may not affirm the decision of the ALJ for a reason upon which the ALJ did not rely. *Id.* Rather, only the reasons identified by the ALJ are considered in the scope of the Court's review. *Id.*

ORDER - 2

The Commissioner employs a five-step sequential evaluation process to determine if a claimant is disabled. 20 C.F.R. § 404.1520, § 416.920. At step four of that process, a claimant's residual functional capacity ("RFC") is assessed to determine whether past relevant work can be performed, and, if necessary, at step five to determine whether an adjustment to other work can be made. *Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013). At step five, the ALJ has the burden of proof, which can be met by showing a significant number of jobs exist in the national economy that the claimant can perform. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999); 20 C.F.R. § 404.1520(e), § 416.920(e).

## ISSUES FOR REVEW

1. Whether the ALJ committed harmful error in considering medical evidence.
2. Whether the ALJ committed harmful error by discounting plaintiff's subjective symptom statements.
3. Did the ALJ properly evaluate lay witness evidence?
4. Is the RFC legally sufficient?

## DISCUSSION

**A. Scope of Review**

Plaintiff filed previous applications for DIB and Supplemental Security Income benefits in March of 2012. AR 93, 112. The Honorable Mary Alice Theiler affirmed the ALJ's decision to deny benefits -- and, Judge Theiler's decision was later affirmed by the U.S. Court of Appeals for the Ninth Circuit -- regarding the 2012 applications. AR 112-131; *R.C. v. Berryhill,* 736 Fed. Appx. 670 (9th Cir. 2018) (unpublished).

ORDER - 3

In the current case, the Appeals Council recognized there has been an adjudication of non-disability for the time period between April 23, 2009 (the alleged onset date for those applications) and June 9, 2014 (the date the ALJ issued the written decision finding that plaintiff was not disabled as to those applications); but, the Appeals Council found that the prior adjudication of the 2012 SSI and DIB applications would not be res judicata for the ALJ's consideration of the 2016 DIB application – because there had been a change in the issues. AR 160-165.

Therefore the relevant time period starts on April 23, 2009 (alleged onset date) and plaintiff must show that he met the criteria for disability on or before December 31, 2014 (date last insured). When the Appeals Council remanded because of new information, it placed the entire record into the scope of review (AR 162-164). The previous decisions by the ALJ (AR 90-111), the District Court (AR 112-131), and the U.S. Court of Appeals for the Ninth Circuit (*R.C. v. Berryhill,* 736 Fed. Appx. 670 (9th Cir. 2018) (unpublished)) are therefore not binding on this Court. The law of the case doctrine would not apply – because in 2016 plaintiff submitted a new application for DIB benefits, there is new evidence for the Court to consider, and applying the doctrine would be unjust when the Appeals Council specifically directed that the entire record should be reviewed. *See generally, Stacy v. Colvin,* 825 F.3d 563, 567 (9th Cir. 2016) (explaining exceptions to the law of the case doctrine).

Likewise, the rule of mandate would not apply, because the instant case concerns judicial review of the plaintiff's December 2016 application for DIB benefits -- an entirely new application -- and the mandate of the Ninth Circuit applied only to the previous applications that were submitted by plaintiff in 2012. *See Stacy v. Colvin,* at

568 (a district court may "'decide anything not foreclosed by the mandate.'")(quoting *Hall v. City of Los Angeles,* 697 F.3d 1059, 1067 (9th Cir. 2012)).

**B. Medical evidence**

Plaintiff alleges that the ALJ erred by discounting medical opinions of plaintiff's treating nurse practitioner, Fernando Carrillo, DNP, FNP-C. Dkt. 18, Opening Brief, at 6. Plaintiff asserts the ongoing and limiting physical, and mental, effects of plaintiff's difficult situation with diabetes, leg and foot swelling, sores that would not heal properly, and medication side-effects, are consistent with DNP Carillo's opinions. Plaintiff's Opening Brief, Dkt. 18 at 3-14.

Plaintiff filed their DIB application prior to March 27, 2017, therefore under the applicable regulations, an ALJ must explain the weight given to DNP Carrillo's opinions, and must provide germane reasons for discounting the opinions. *Popa v. Berryhill,* 872 F.3d 901, 906 (9th Cir. 2017) ("ALJ may discount the opinion of an 'other source,' such as a nurse practitioner, if she provides 'reasons germane to each witness for doing so.'" (quoting *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012)); *Lester v. Chater*, 81 F.3d 821, 830-831 (9th Cir. 1995) (citations omitted) (treating source generally entitled to greater weight than non-examining source); *see also* 20 C.F.R. § 404.1513(a) and (d), 416.913(a) and (d), SSR 06-03p (distinguishing between acceptable medical sources and "other sources" such as a nurse practitioner).

Before he established care with the Veteran's Administration in 2011, the medical record shows that plaintiff was admitted to the hospital between March 29, and April 1, 2010 in Vancouver, Washington; his condition was "full code status" (AR 4937), and plaintiff was placed in the intensive care unit on March 29, 2010. AR 4932-4945. Dr.

ORDER - 5

Ahmed noted intractable vomiting, diabetic ketoacidosis, infected hematoma (sepsis had set in [AR 4937], multiple eschars on body – and, an abscess on plaintiff's arm was found to be infected with Methicillin-resistant Staphylococcus aureus [MRSA]). AR 4937-4938. Plaintiff told Dr. Matthew Westermeyer (upon admission to the hospital on March 29) he had been vomiting green liquid numerous times daily for three days, had red and painful swelling on the left forearm, and not seen an MD "for as long as he can recall". AR 4945. Dr. Ahmed diagnosed "new onset diabetes", diabetic ketoacidosis, sepsis, and MRSA. AR 4937.

The medical record shows that plaintiff established care with the Veteran's Administration medical system after community outreach by VA staff; and he sought treatment for diabetes and started his appointments with DNP Fernando Carrillo on November 19, 2011. AR 5024, 5040-5041. Plaintiff entered military service in 1990 and separated from the U.S. Army in 1992. AR 5032. He was interested in finding transitional housing because he was experiencing homelessness in November 2011. AR 5034-5041. He stated he had been diabetic, but was without medications for about one year. AR 5014. The notes from his intake, and the initial evaluation with DNP Carillo indicate diabetes, open scabbed lesions, and moderate diabetic retinopathy. AR 5023-5038.

According to DNP Carrillo's report about plaintiff's functioning, in October 2013 plaintiff suffered from constant symptoms of neuropathic pain, numbness in hands, and uneven cognitive function due to wide swings in diabetic glucose changes. AR 5271. Plaintiff was on several medications; DNP Carrillo opined that because of the medications there were impacts on plaintiff's capacity for work, including dizziness,

ORDER - 6

difficulty concentrating, and issues with insulin such as low blood sugar levels. *Id.* As a result of his conditions, and the drug side effects, plaintiff would need to take unscheduled breaks every two to three hours in an eight-hour work day, and each break would be five to ten minutes, DNP Carrillo stated. *Id.* DNP Carrillo opined that plaintiff would be absent from work three or four times per month, and would not be physically capable of working an eight-hour day, five days per week, on a sustained basis. AR 5272.

In another functional assessment, a Residual Functional Capacity Questionnaire dated April 3, 2014, DNP Carillo stated that he had been treating plaintiff since November 19, 2011. DNP Carillo opined that plaintiff had been experiencing the limitations and restrictions described in the assessment, since that date. AR 4919. DNP Carillo provided a report that included many of the same limitations that were in the October 2013 assessment – diabetes, peripheral sensory neuropathy, and cognitive difficulties. Yet there were additional medical issues documented by DNP Carillo in the April 2014 questionnaire.

In the April 2014 report, DNP Carillo reported diminished vision, venous ulcers, HTN, and also stated that side effects of plaintiff's medications included nausea, diarrhea, anorexia, and increased urination. AR 4920. In addition, DNP Carillo stated that plaintiff would need to recline or lie down more frequently than the typical breaks, during an eight-hour work day. AR 4920. DNP Carillo also stated that plaintiff would only be able to sit for 30 minutes at one time, and would only be able to stand or walk for 15 minutes at a time. AR 4920. As to sitting, plaintiff would be limited to a total of three

hours in an eight-hour workday; as to standing or walking, plaintiff would be limited to a total of one hour in an eight-hour workday. AR 4920.

Also, DNP Carillo opined in the April 2014 report, that plaintiff would be required to take approximately one unscheduled break every hour, for five to ten minutes each time. *Id.* Regarding being able to use hands or fingers, DNP Carillo opined that plaintiff had no ability to grasp, turn, or twirl objects with his hands; and also had no ability to do any fine manipulation with his fingers, and would only be able to reach for 10% of an eight-hour day. AR 4921. DNP Carillo stated that plaintiff would likely be absent from work four or more times each month due to the symptoms and conditions that produced these functional limitations. AR 4921. And, DNP Carillo opined that plaintiff would not be physically capable of working an eight-hour day, five days per week on a sustained basis. *Id.*

The medical record, considered as a whole, is consistent with DNP Carillo's statements and opinions. *See, Popa v. Berryhill,* 872 F.3d 901, 907 (9th Cir. 2017) (Court of Appeals found the ALJ erred by discounting the opinion of a nurse practitioner who was plaintiff's primary care provider for more than two years – the ALJ discounted the opinion because the nurse practitioner used a check box form and the ALJ found some conflicting evidence in the record; these were not germane reasons to discount the treating provider's opinion).

DNP Carillo was the primary care provider for plaintiff for many years; this treating source relationship is important in considering the longitudinal record, and the conclusory remarks of the ALJ about conflicting medical evidence is not a germane reason to discount DNP Carillo's opinions. *Popa v. Berryhill* at 907. Moreover, the ALJ

ORDER - 8

does not address the portion of DNP Carillo's opinion that points to medication side effects -- nausea, diarrhea, anorexia, and increased urination -- as causing significant work-related limitations. AR 32-33. The ALJ erred – there is not substantial evidence to discount the evaluations by DNP Carillo. The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). If Dr. Carillo's evaluations are credited as true, then plaintiff prevails and an award of benefits is appropriate, as discussed below. See AR 484-485 (Vocational Expert testifies that if a person had to take extra breaks during the work day – in addition to the regular breaks, and the breaks were 20 minutes each; or if the person were absent two to three times per month on an ongoing basis -- they would not be able to sustain competitive employment).

### C. Plaintiff's statements about symptom severity

Plaintiff contends the ALJ erred by failing to properly evaluate all of the medical evidence, and this led to an erroneous rejection of plaintiff's statements about symptom severity. Dkt. 18, Opening Brief, at 14-15. In addition, plaintiff asserts the ALJ did not have substantial evidence upon which to determine that plaintiff's activities were inconsistent with plaintiff's statements about the severity of symptoms. Dkt. 18 at 15-16.

Plaintiff gave testimony in several hearings.[1] AR 456-519 (11-26-2013); AR 43-89 (1-31-2019, and 11-10-2020). At the hearing in 2013, plaintiff stated that his eyesight was poor even with glasses – blurry, and he could not read. AR 472-473. He lived with

---

[1] There is a reference to a hearing where plaintiff testified during the hearing from the hospital, see AR 48, 50-52. It is not clear from the record, whether that is the hearing on November 26, 2013, or some other hearing.

ORDER - 9

his sister and mother for about nine years, and they helped him with medications. AR 473, 479. He assisted with some of the chores, such as vacuuming and laundry. AR 473-474. When asked about hobbies or activities, he stated that he tried to walk but could not go very far; he also tried to take a tai chi class, but persistently fell and could not continue that activity. AR 479-480.

He stated that, starting about a year and a half before the November 2013 hearing date, his legs were being treated with wraps twice a week, due to problems with swelling and sores. AR 466-470. He confirmed that, due to swelling in his feet, he experienced limits on walking, standing, and balance. AR 470. He used a cane prescribed by the medical provider at the Veteran's Administration (had been using it for about a year at the time of the hearing) every day to ambulate, "to make sure [he did not] fall on [his] face." AR 466-467. Plaintiff also stated that he needed to elevate his feet when he was sitting, and also had to take breaks and monitor his blood sugars for diabetic lows, and also had neuropathy in his hands and arms, which prevented his being able to type. AR 466-467, 471-472. He also testified he could only stand for about 15 minutes to an hour at any one time. After about 15 minutes he would get dizzy, lightheaded, about to pass out. AR 476-477. If he stood for 30 minutes to an hour, his feet would swell. AR 477.

In the January 2019 hearing, AR 50-61, the ALJ told plaintiff that his testimony needed to focus on the time between April 10, 2014 and December 31, 2014 – a narrow focus that the Appeals Council later rejected. At the November 10, 2020 hearing, AR 64-89, the ALJ expanded the record, after a remand by the Appeals Council.

ORDER - 10

During the hearings in 2019 and 2020, plaintiff again testified to the symptoms and limitations he had described during the hearing in 2013. AR 50-60; AR 85-87. He stated that his vision had become worse, to the point where for a time period, he could not see at all (AR 53, 55). He confirmed that he could not sit for more than one hour, and could not stand for more than about two hours. AR 56. In addition, he was required to elevate his legs so they would be above heart level – every hour or two hours – and he would need to keep them elevated for about an hour or 90 minutes each time he lifted them. AR 52.

The ALJ's determinations regarding a claimant's statements about limitations "must be supported by specific, cogent reasons." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (*citing Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990)).  In assessing a Plaintiff's credibility, the ALJ must determine whether plaintiff has presented objective medical evidence of an underlying impairment. If such evidence is present and there is no evidence of malingering, the ALJ can only reject plaintiff's testimony regarding the severity of his symptoms for specific, clear and convincing reasons. *Ghanim v. Colvin,* 763 F.3d 1154, 1163 (9th Cir. 2014) (*citing Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)).

"Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."  *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) (citing *Johnson v. Shalala,* 60 F.3d 1428, 1434 (9th Cir.1995)). But an ALJ may not reject a claimant's subjective symptom testimony "solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." *Bunnell v. Sullivan,* 947 F.2d 341, 345 (9th Cir. 1991); *Byrnes v. Shalala*, 60 F.3d 639,

641-42 (9th Cir. 1995) (applying rule to subjective complaints other than pain). Treatment records cannot be cherry-picked; the ALJ must consider a particular record of treatment in light of the overall diagnostic record. *Ghanim v. Colvin,* 763 F.3d at 1164.

An ALJ may discount a claimant's testimony based on daily activities that either contradict their testimony or that meet the threshold for transferable work skills. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Even if daily activities show that plaintiff had difficulty functioning, if the activities contradict plaintiff's statements about totally debilitating impairment the ALJ may rely on the daily activities as a reason to discredit plaintiff's testimony. *Molina v. Astrue,* 674 F.3d 1104, 1113 (9th Cir. 2012).

In this case, the ALJ erred by discounting plaintiff's credibility. The medical record, taken as a whole, is consistent with plaintiff's statements about symptoms and limitations. With respect to plaintiff's statements about his activities, the ALJ pointed to instances where plaintiff seemed to be recovering, and relied on these examples for discounting plaintiff's statements regarding symptoms. For example, during August of 2013, plaintiff improved enough that he looked for work and even worked part-time. AR 5251. Even where a claimant's activities show difficulty with functioning, they may be grounds upon which the ALJ may discredit the claimant's testimony. *Molina,* at 1113. Yet a disability claimant should not be penalized for attempting to stay active and engaged. *Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir. 1998).

There was not a clear and convincing reason, based on substantial evidence, for the ALJ to discount plaintiff's statements about his symptoms and limitations. The record shows that plaintiff's symptoms may have waxed and waned, but overall the limitations were so difficult that plaintiff's diabetic neuropathy, poor eyesight, anemia,

cognitive issues relating to blood sugar changes, difficulty maintaining blood sugar stability, along with numerous instances of treatment for non-healing sores, and having his toe amputated, shows that he was not able to sustain the stamina, pace, and concentration necessary for full-time employment.

The Court will not endeavor to cite every instance in the voluminous medical documentation that supports plaintiff's subjective symptom statements. In addition to DNP Carillo's assessments in 2013 and 2014 that discuss the time period between November 2011 and the dates of those reports, described above – there is an abundance of medical records supporting plaintiff's statements about limitations and severity of symptoms -- *see* e.g., AR 525-548 (In February 2015, plaintiff is hospitalized and Dr. Khan observes that plaintiff was confused about medication, Dr. Khan finds that plaintiff suffers from diabetic ketoacidosis, pseudohyponatremia, acute kidney disease, upper GI bleed, coronary artery disease, heart failure, and diabetes mellitus type I); AR 1632-1753, 1838, 2002-2003, 5255-5362 (plaintiff receives treatment of cleaning his legs and wrapping with various therapies such as boots, netting, and compression socks, once or twice per week between June of 2013 and December 2014); AR 1727 (DNP Carillo recommends compression bandages on 8-14-2014 twice per week for plaintiff's legs because other therapies had not resolved the issues with plaintiff's legs); AR 1717 (Dr. Griebler and Dr. Mansoor, psychiatrists, observed that plaintiff showed restricted an mildly irritated affect, impaired insight, and impaired cognition in September 2014); AR 3125-3127 (April 2014, plaintiff was hospitalized for ten days with heart failure, acute kidney injury, nausea, vomiting, anemia, diabetes, lower extremity wounds); AR 4090-4119, 4389-4396 (November and December 2017, plaintiff's toe was

amputated after gangrene set in, Type 1 diabetes diagnosed, and "poorly controlled", plaintiff was placed into residential rehabilitation community living center, given a motorized scooter by the VA for ambulating); AR 4227-4297  (January through July 2018, plaintiff presented in a wheeled chair, transfers himself using a walker, being treated for stage 5 kidney disease, acute anemia due to kidney disease, had been recuperating after a stroke, cognitive delay); AR 4932-4945 (hospitalization March 29 – April 1, 2010, MRSA infection, sepsis, initial diagnosis of diabetes); AR 5136-5144 (Ariana Clark, MSW, in March 2012, observes plaintiff's possible delayed thinking, latencies in speech); AR 5126-5207 (April 2012, emergency room physicians diagnose and observe edema in plaintiff's left leg, rash and scars on arms and legs, cellulitis in his left foot, diabetes, and Dr. Brent Jones tells plaintiff to keep foot elevated when he is not walking); AR 5225-5226 (January 2013, diagnostic tests show plaintiff suffers from moderate to severe nonproliferative diabetic retinopathy and perimacular ERM in right eye, severe nonproliferative diabetic retinopathy and perimacular ERM in left eye); AR 5581-5738 (between March and July 2020, documenting dialysis appointments and wound care for bilateral venous leg ulcers – leg swelling prevents them from healing); AR 5851, 5935-6051 (January through March 2020, plaintiff using a wheelchair and walker, venous hypertension swelling, preventing his leg from healing, toe amputated, diet problems, medical device issues, exacerbating diabetes); AR 6982 (occupational therapist Pilarski states, on 4-25-2019, that plaintiff's functional endurance is poor); AR 6988 (plaintiff has dialysis treatment for kidney failure on 4-25-2019); AR 7151 (December 2018, vision exam – blurry in both eyes).

Plaintiff's testimony and statements about symptoms and limitations should be credited as true. *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017). As discussed below, the case should be remanded for an award of benefits.

### D. Lay witness evidence

Plaintiff makes a general argument that the ALJ failed to take into account any of the lay witness evidence. Dkt. 18, Opening Brief, at 16. Plaintiff's sister, T.M.C., provided a third-party function report on 2-4-2017. AR 388-395.

When evaluating opinions from non-acceptable medical sources such as a therapist or a family member, an ALJ may expressly disregard such lay testimony if the ALJ provides "reasons germane to each witness for doing so." *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010) (*quoting Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). And where an ALJ has provided clear and convincing reasons to discount a claimant's testimony, those reasons are germane reasons for rejecting similar lay witness testimony. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009). In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. *Lewis v. Apfel,* 236 F.3d 503, 511 (9th Cir. 2001). The ALJ also may "draw inferences logically flowing from the evidence." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

In this case, the ALJ noted statements of plaintiff's family member (plaintiff's sister who lived with him and assisted with his medical appointments, see AR 388-395, 456-519); and the ALJ discounted them because they were inconsistent with the totality

of the medical record. AR 34. This was not a germane reason for rejecting the lay witness evidence – because the medical evidence supports and is consistent with the lay witness evidence.

E.  RFC

Plaintiff argues the Commissioner's Vocational Expert's evidence was undermined by plaintiff's alternative evidence, presented by Vocational Rehabilitation Counselor (VRC) North. In light of the Court's decision to reverse for an award of benefits, the issue about whether the RFC should have included evidence presented by VRC North need not be decided.

## REMAND FOR AWARD OF BENEFITS

For the foregoing reasons, the Commissioner's decision in this case is REVERSED and this matter is REMANDED to the Commissioner to determine the date of onset and to award benefits. "'The decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court.'" *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). If an ALJ makes an error and the record is uncertain and ambiguous, the court should remand to the agency for further proceedings. *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). Likewise, if the court concludes that additional proceedings can remedy the ALJ's errors, it should remand the case for further consideration. *Revels*, 874 F.3d at 668.

The Ninth Circuit has developed a three-step analysis for determining when to remand for a direct award of benefits. Such remand is generally proper only where

ORDER - 16

> "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand."

*Trevizo*, 871 F.3d at 682-83 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014)).

The Ninth Circuit emphasized in *Leon* that even when each element is satisfied, the district court still has discretion to remand for further proceedings or for award of benefits. *Leon*, 80 F.3d at 1045.

Here, plaintiff asks that the Court remand for an award of benefits based on the ALJ's errors in evaluating the medical opinion evidence and plaintiff's subjective testimony. Providing another opportunity to assess improperly evaluated evidence does not qualify as a remand for a "useful purpose" under the first part of the credit as true analysis. *Garrison*, 759 F.3d at 1021-22, (citing *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication.")).

If the opinions of DNP Carillo were credited as true, particularly DNP Carillo's opinion about the debilitating effects of plaintiff's medications, that plaintiff would miss four or more days of work per month, that plaintiff would be required to take a break each hour of the working day, and that plaintiff would have severe restrictions on being able to sit, stand, or walk, the ALJ would be required to find plaintiff disabled on remand. *See Trevizo v. Berryhill,* 871 F.3d at 683 (further delays would be unduly burdensome); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1041 (9th Cir. 2007) ("[W]e will not remand for further proceedings where, taking the claimant's testimony as true, the ALJ would

ORDER - 17

clearly be required to award benefits."). Likewise, crediting as true plaintiff's statements about the severity of his symptoms and the work-related limitations he suffered because of those symptoms, remand for an award of benefits is warranted. There is no ambiguity in the record regarding whether plaintiff met the criteria for disability before December 31, 2014, his date last insured.

Accordingly, remand for an award of benefits is the appropriate remedy. There is an issue of fact regarding whether the date of onset was in March 2010 or November 2011. *See generally, Dominguez v. Colvin,* 808 F.3d 403, 409-410 (9th Cir. 2015) (gap in the record required further proceedings to determine the onset date). The ALJ found the earliest medical evidence was from March 2010 (AR 24). Plaintiff states that the onset date is November 19, 2011. Dkt. 18, Plaintiff's Opening Brief, at 19.

On remand, the Commissioner shall determine whether the record shows a date of onset starting March 29, 2010 (see AR 24, 4932-5025) or November 19, 2011 (see AR 4919), and award benefits.

Dated this 16th day of August, 2022.

Theresa L. Fricke
United States Magistrate Judge

ORDER - 18